PER CURIAM.
The Florida Bar, as part of its annual review and with the authorization of the Board of Governors, petitions this Court to amend the Rules Regulating The Florida Bar and to adopt new rules. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
We have considered the Bar’s proposals as well as the objections submitted by a member of the Bar regarding the form of proposed rule 3-7.16 and the addition of subsection (i) to rule 4r-8A. We agree that the words “stay” and “stayed” in proposed rule 3 — 7.16(c) should be replaced with the term “tolling” in its appropriate form. The Bar does not object to this modification.
We find the remaining objections without merit, and we approve the Bar’s proposals with one additional modification to proposed rule 3-7.16. We add to the title and text of subsection (b) the language “or a conviction of a felony offense.”
Accordingly, the rules are amended and adopted as reflected in the appendix to this opinion. The new language is indicated by underscoring; deletions are indicated by strike-through type. Committee comments are included for explanation and guidance only, and are not adopted as an official part of the rules. These amendments take effect upon the release of this opinion. No motion for rehearing shall be entertained.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
APPENDIX
1-12. AMENDMENTS
RULE 1-12.1 AMENDMENT TO RULES; AUTHORITY; NOTICE; PROCEDURES; COMMENTS
(a) Authority to Amend. The board of governors of The Florida Bar shall have the *931 authority to amend chapters 6, schedule AT thereto, and the standards for the individual areas of certification; 7; and 9 of these Rules Regulating The Florida Bar, consistent with the notice, publication, and comments provided below. Only the Supreme Court of Florida shall have the authority to amend all other chapters of these Rules Regulating The Florida Bar.
(b) Proposed Amendments. Any member of The Florida Bar in good standing or a section or committee of The Florida Bar may request the board of governors to consider an amendment to these Rules Regulating The Florida Bar.
(c) Board Review of Proposed Amendments. The board of governors shall review proposed amendments by referral of the proposal to an appropriate committee thereof for substantive review. After substantive review, an appropriate committee of the board shall review the proposal for consistency with these rules and the policies of The Florida Bar. After completion of review, a recommendation concerning the proposal shall be made to the board.
(d) Notice of Proposed Board Action. Notice of the proposed action of the board on a proposed amendment shall be given in an edition of The Florida Bar News that is published prior to the meeting of the board at which the board action is taken. The notice shall identify the rule(s) to be amended and shall state in general terms the nature of the proposed amendments.
(e) Comments by Members. Any member may request a copy of the proposed amendments and may file written comments concerning them. The comments shall be filed with the executive director sufficiently in advance of the board meeting to allow for copying and distribution to the members of the board.
(f) Approval of Amendments. Amendments to other than chapters 6, schedule A thereto, and the standards for the individual areas of certification; 7; and 9 of these Rules Regulating The Florida Bar shall be by petition to the Supreme Court of Florida. Petitions to amend these Rules Regulating The Florida Bar may be filed by the board of governors or by 50 members in good standing, provided that any amendments proposed by members of the bar shall be filed 90 days after filing them with The Florida Bar.
(g) Notice of Intent to File Petition. Notice of intent to file a petition to amend these Rules Regulating The Florida Bar shall be published in The Florida Bar News at least 30 days before the filing of the petition. The notice shall set forth the text of the proposed amendments, state the date the petition will be filed, and state that any comments or objections must be filed within 30 days of filing the petition. A copy of all comments or objections shall be served on the Executive Director of The Florida Bar and any persons who may have made an appearance in the matter.
(h) Action by the Supreme Court of Florida. The court shall review all proposed amendments filed under this rule and such amendments shall not become effective until an order is issued approving them. Final action of the court shall be reported in The Florida Bar News.
(i) Waiver. On good cause shown, the court may waive any or all of the provisions of this rule.
BYLAW 2-3.4 ANNUAL APPORTIONMENT
(a) Certification of Membership by Executive Director. The executive director shall each year as of October 1 determine from the official records of The Florida Bar the number of members, in good standing, of The Florida Bar residing in each judicial circuit and outside the State of Florida. For purposes of these rules, residency shall be determined by a member’s official bar address. The executive director shall thereafter determine by application of the formula in bylaw 2-3.3 the number of members of the board of governors to serve from each judicial circuit. The executive director shall file a certificate setting forth the above information with the clerk of the Supreme Court of Florida and shall cause a copy of such certifi *932 cate to be published in The Florida Bar News on or before November 1 of each year and shall include the names of those incumbent board of governors’ representatives who have advised the executive director of their intentions to seek reelection in accordance with the provisions of subdivision (b). The certifícate shall be published in the format of bylaw 2-8.5(a). The reapportionment established by the terms of such certificate shall automatically amend bylaw 2-3.5(a) on December 1 unless the Supreme Court of Florida orders otherwise.
(b) Members’ Intentions to Seek Reelection. Board of governors’ members, in a nonbinding notification tendered to The Florida Bar no later than October 1 in the final year of their term of office, shall advise the executive director of their intentions to seek reelection to a new term. The executive director shall cause such information to be published in The Florida Bar News within the certification of board of governors’ membership specified in subdivision (a).
(be) Elected Members to Serve Full Term. No elected member of the board of governors shall serve less than the full term to which elected by reason of any reapportionment required by subdivision (a).
BYLAW 2-3.5 NOMINATION OF MEMBERS
(a) Staggered Terms. Elections shall be held and appointments made in even-numbered years for the following board of governors’ representatives:
Circuit (seat #)
1
2(2)
3
4(1)
6(1)
7
9(1)
9(3)
10
11(1)
11(3)
11(5)
11(7)
11(9)
13(1)
14
15(1)
15(3)
17(1)
17(4)
18
20
nonresident (2)
public member (2)
Elections shall be held and appointments made in odd-numbered years for the following board of governors’ representatives:
Circuit (seat #)
2(1)
4(2)
5
6(2)
8
9(2)
11(2)
11(4)
11(6)
11(8)
11(10)
12(1)
13(2)
13(3)
15(2)
16
17(2)
17(3)
17(5)
19
nonresident (1)
nonresident (3)
public member (1)
As additions or deletions of circuit representatives resulting from the application of the formula provided in this rule necessitate changes in the lists set forth above, both in circuit and office numbers, such changes shall be made by the executive director as appropriate and shall be published in The Florida Bar News on or before November 1.
(b) Time for Filing Nominating Petitions. Nominations for the election of representatives on the board of governors from *933 each judicial circuit shall be made by written petition signed by not fewer than 5 members of The Florida Bar in good standing. In each circuit in which there is more than 1 representative to be elected, the offices of the representatives shall be designated numerically, with the executive director making whatever adjustments are necessary to reflect changes resulting from the annual certification, and a nominating petition shall state the number of the office sought by a nominee. Any number of candidates may be nominated on a single petition, and any number of petitions may be filed, but all candidates named in a petition and all members signing such petition shall have their official bar address in the judicial circuit that the candidate is nominated to represent and shall be members of The Florida Bar in good standing. Nominations for election of a nonresident member of the board of governors shall be by written petition signed by not fewer than 5 nonresident members of The Florida Bar in good standing. Nominees shall endorse their written acceptance on such petitions but no nominee shall accept nomination for more than 1 office. All nominating petitions shall be filed with the executive director at the headquarters office on or before 5:00 p.m., December 15 prior to the year of election. Filing by facsimile is permitted but shall occur only when transmission is complete. On a date to be fixed by the executive director the nominating petitions shall be canvassed and tabulated by the executive director and the clerk of the-Supreme Court of Florida,-and the executive director and the clerk of-the Supreme Court of Florida who shall thereupon certify in writing the names of all members who have been properly nominated and file such certificate with the clerk of the Supreme Court of Florida.
(c) Nomination and Appointment of Nonlawyer Members. The board of governors’ members who are not members of The Florida Bar shall be chosen and appointed by the Supreme Court of Florida from the list of nominees to be filed with the court by the board of governors. The board of governors of The Florida Bar by majority vote shall nominate 3 persons for each nonlawyer seat and shall file the nominations with the Supreme Court of Florida on or before April 15 of the appointment year for that seat. The 2 nonlawyer members shall serve staggered terms of 2 years and shall serve no more than 2 terms.
BYLAW 2-3.6 ELECTION
Voting shall be by secret ballot. The executive director shall prepare and cause to be printed a sufficient number of ballots for the election of nonresident board members and for each judicial circuit office for which an election is to be held. One of such ballots shall be mailed to each member of The Florida Bar in good standing in each of such judicial circuits and to each nonresident member of The Florida Bar in good standing in the case of election of a nonresident board member. The records of the executive director shall be conclusive in determining the members entitled to receive such ballots. When more than one office is to be filled, the offices shall be listed on the ballots in numerical order. The names of candidates on the ballots shall be listed alphabetically for each office. The ballots shall be mailed on or before March 1. Only voted ballots received by the executive director prior to midnight on March 21 shall be counted or tabulated. Immediately after March 21, the executive director and-the clerk of the Supreme Court of Florida shall canvass and tabulate the ballots received, and certify the results of the election, and file such certificate with the clerk of the Supreme Court of Florida. Failure to make a nomination shall result in a vacancy to be filled in accordance with the provisions of bylaw 2-3.9. The candidate for an office receiving a majority of the votes cast for the office shall be declared elected. In the event no candidate receives such majority there shall be a runoff election between the 2 candidates receiving the highest number of votes. The ballots for the runoff shall be mailed on or before April 1 and the voted ballots shall be received by the executive director prior to midnight on April 22. *934 The ballots shall be counted and the results certified as provided for the first election. In the event that only 1 candidate has been nominated for a particular office on the board of governors, such candidate shall be declared elected. Results of the election shall be furnished by the executive director to the officers, members of the board of governors, and all candidates and may be furnished to any other interested persons upon their request.
BYLAW 2-7.3 CREATION OF SECTIONS AND DIVISIONS
Sections and divisions may be created or abolished by the board of governors as deemed necessary or desirable. The following sections of The Florida Bar have been created by the board of governors:
(a) Administrative Law Section;
(b) Appellate Practice and Advocacy Section;
(be) Business Law Section;
(cd) Criminal Law Section;
(de) Elder Law Section;
(ef) Entertainment, Arts, and Sports Law Section;
(fg) Environmental and Land Use Law Section;
(gh) Family Law Section;
(hi) General Practice Section;
(ij) Government Lawyer Section;
(jk) Health Law Section;
(kl) International Law Section;
(1m) Labor and Employment Law Section;
(*»n) Local Government Law Section;
(»o) Practice Management and Technology Section;
(eg) Public Interest Law Section;
(pq) Real Property, Probate, and Trust Law Section;
(qr) Tax Section;
(rs) Trial Lawyers Section; and
(st) Workers’ Compensation Section.
The following divisions of The Florida Bar have been created by the board of governors:
(a) Out-of-State Practitioners Division; and
(b) Young Lawyers Division.
RULE 3-7.16 LIMITATION ON TIME TO BRING COMPLAINT
(a) Time for Inquiries and Complaints. Inquiries raised or complaints presented by or to The Florida Bar under these rules shall be commenced within 6 years from the time the matter giving rise to the inquiry or complaint is discovered or, with due diligence, should have been discovered.
(b) Exception for Theft or Conviction of a Felony Criminal Offense. There shall be no limit on the time in which to present or bring a matter alleging theft or conviction of a felony criminal offense by a member of The Florida Bar.
(c) Tolling Based on Fraud, Concealment or Misrepresentation. In matters covered by this rule where it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the matter giving rise to the inquiry or complaint, the limitation of time in which to bring an inquiry or complaint within this rule shall be tolled.
RULE 4-1.5 FEES FOR LEGAL SERVICES
(a) Illegal, Prohibited, or Clearly Excessive Fees. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or pearly excessive-fee .or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or
(2) the fee is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a nonclient party, or any court, as to either entitlement to, or amount of, the fee.
*935 (b) Factors to Be Considered in Determining Reasonable Fee. Factors to be considered as guides in determining a reasonable fee include:
(1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(8) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client’s ability to pay rested to any significant degree on the outcome of the representation.
(c) Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors.
(d) Enforceability of Fee Contracts. Contracts or agreements for attorney’s fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.
(e) Duty to Communicate Basis or Rate of Fee to Client. When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
(f) Contingent Fees. As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer’s compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each *936 were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(A) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(B) a contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
(A) The contract shall contain the following provisions:
(i) “The undersigned client has, before signing this contract, received and read the statement of client’s rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s).”
(ii) “This contract may be cancelled by written notification to the attorney at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney for the work performed during that time. If the attorney has advanced funds to others in representation of the client, the attorney is entitled to be reimbursed for such amounts as the attorney has reasonably advanced on behalf of the client.”
(B) The contract for representation of a client in a matter set forth in subdivision (f)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
(i) Without prior court approval as specified below, any contingent fee that exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
a. Through Before the time-of filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action: L 33½% of any recovery up to $1 milliom; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
b. From After the time-of filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment.
1. 40% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
c. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
1. 33½% of any recovery up to $1 million; plus
2. 20% of any portion of the recovery between $1 million and $2 million; plus
3. 15% of any portion of the recovery for any — amount exceeding $2 million.
d. An additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment.
(ii) If any client is unable to obtain an attorney of the client’s choice because of *937 the limitations set forth in (f)(4)(B)(i), the client may petition the circuit court for approval of any fee contract between the client and an attorney of the client’s choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client’s rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under subdivisions (a) and (b).
(iii) In cases where the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall only be calculated on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, then this limitation does not apply. No attorney may separately negotiate with the defendant for that attorney’s fee in a structured verdict or settlement where such separate negotiations would place the attorney in a position of conflict.
(C) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client’s rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client’s file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5).
(D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shall be on the following basis:
(i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
(ii) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
(iii) The 25% limitation shall not apply to those eases in which 2 or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply for circuit court authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel that shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this subdivision shall contain a certificate showing service on the client and The Florida Bar. Counsel may proceed with representation of the client pending court approval.
(iv) The percentages required by this subdivision shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be execut *938 ed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(g) Division of Fees Between Lawyers in Different Firms. Subject to the provisions of subdivision (f)(4)(D), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) the division is in proportion to the services performed by each lawyer; or
(2) by written agreement with the client:
(A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
(h) Credit Plans. Charges made by any lawyer or law firm under an approved credit plan shall be only for services actually rendered or cash actually paid on behalf of the client. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer’s or law firm’s participation in an approved credit plan.
STATEMENT OF CLIENT’S RIGHTS FOR CONTINGENCY FEES
Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:
1.There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a ease. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one lawyer you may talk with other lawyers.
2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer’s actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.
3. Before hiring a lawyer, you, the client, have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer’s actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.
4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.
5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other *939 lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the ease. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney’s fees to the other side.
8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire ease, including the amount recovered, all expenses, and a precise statement of your lawyer’s fee. Until you approve the closing statement you need not pay any money to anyone, including your lawyer. You also have the right to have every lawyer or law firm working on your ease sign this closing statement.
9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer’s ability.
10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 904-561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under Chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.
Client Signature Attorney Signature B
Date Date
Comment
Basis or rate of fee
When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the *940 client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer’s customary fee schedule is sufficient if the basis or rate of the fee is set forth.
Rule 4-1.8(e) should be consulted regarding a lawyer’s providing financial assistance to a client in connection with litigation.
Terms of payment
A lawyer may require advance payment of a fee but is obliged to return any unearned portion. See rule 4 — 1.16(d). A lawyer is not, however, required to return retainers that, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer’s special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client’s interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client’s ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client’s best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
Rule 4-1.5(f)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.
Contingent fee regulation
Rule 4 — 1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4 — 1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncontingent and part contingent attorney’s fees, rule 4-1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncon-tingent portion of the fee even if the matter was not successfully prosecuted or if the noneontingent portion of the fee exceeded the schedule set forth in rule 4H.5(f)(4)(B). Rule 4 — 1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4-1.5(f)(4)(B).
The limitations in rule 4 — 1.5(f)(4)(B)(i)c are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4^1.5(f)(4)(B)(ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client upon approval by a circuit court judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular *941 lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4 — 1.5(b).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands the right to have the limitations in rule 4-1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim that is the subject of the contract.
The proceedings before the trial court and the trial court’s decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable ease law or rules of evidence.
Rule 4r-1.5(f)(4)(B)(iii) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer’s fee is being paid over the same length of time as the schedule of payments to the client.
Division of fee
A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Subject to the provisions of subdivision (f)(4)(D), subdivision (g) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation .entails the obligations stated in rule 4-5.1 for purposes of the matter involved.
Disputes over fees
Since the fee arbitration rule (Chapter 14) has been established by the bar to provide a procedure for resolution of fee disputes, the lawyer should conscientiously consider submitting to it. Where law prescribes a procedure for determining a lawyer’s fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages, the lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.
Referral fees and practices
A secondary lawyer shall not be entitled to a fee greater than the limitation set forth in rule 4^1.5(f)(4)(D)(ii) merely because the lawyer agrees to do some or all of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.
The provisions of rule 4 — 1.5(f)(4)(D)(iii) only apply where the participating lawyers have for purposes of the specific ease established a co-counsel relationship. The need for court approval of a referral fee arrangement under rule 4 — 1.5(f)(4)(D)(iii) should only occur in a small percentage of cases arising under rule 4 — 1.5(f)(4).
In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is *942 contemplated that a co-counsel situation would exist where a division of responsibility is based upon, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility, and representation in a convenient fashion. Such a situation would occur when different aspects of a case must be handled in different locations; (b) where the lawyers agree to divide the legal work and representation based upon their particular expertise in the substantive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages, or other similar factors.
The trial court’s responsibility when reviewing an application for authorization of a fee division under rule 4-1.5(f)(4)(D)(iii) is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee division agreed upon by the lawyers and the client.
Rule 4-1.5(f)(4)(D)(iv) applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case. The percentages set forth in subdivision (f)(4)(D) are to be applicable after appellate counsel’s fee is established. However, the effect should not be to impose an unreasonable fee on the client.
RULE 4-7.4 DIRECT CONTACT WITH PROSPECTIVE CLIENTS
(a) Solicitation. A lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer’s doing so is the lawyer’s pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit in the lawyer’s behalf. A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this rule. The term “solicit” includes contact in person, by telephone, telegraph, or facsimile, or by other communication directed to a specific recipient and includes any written form of communication directed to a specific recipient and not meeting the requirements of subdivision (b) of this rule.
(b) Written Communication.
(1) A lawyer shall not send, or knowingly permit to be sent, on the lawyer’s behalf or on behalf of the lawyer’s firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer’s firm, a written communication to a prospective client for the purpose of obtaining professional employment if:
(A) the written communication concerns an action for personal injury or wrongful death or otherwise relates to an accident or disaster involving the person to whom the communication is addressed or a relative of that person, unless the accident or disaster occurred more than 30 days prior to the mailing of the communication;
(B) the written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter;
(C) it has been made known to the lawyer that the person does not want to receive such communications from the lawyer;
(D) the communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;
(E) the communication contains a false, fraudulent, misleading, deceptive, or unfair statement or claim or is improper under rule 4-7.1; or
(F) the lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyer.
(2) Written communications to prospective clients for the purpose of obtaining professional employment are subject to the following requirements:
(A) Each page of such written communications shall be plainly marked “advertise *943 ment” in red ink, and the lower left corner of the face of the envelope containing a written communication likewise shall carry a prominent, red “advertisement” mark. If the written communication is in the form of a self-mailing brochure or pamphlet, the “advertisement” mark in red ink shall appear on the address panel of the brochure or pamphlet. Brochures solicited by clients or prospective clients need not contain the “advertisement” mark.
(B) A copy of each such written communication and a sample of the envelopes in which the communications are enclosed shall be filed with the standing committee on advertising either prior to or concurrently with the mailing of the communication to a prospective client, as provided in rule 4-7.5. The lawyer also shall retain a copy of each written communication for 3 years. If identical written communications identical in content are sent to 2 or more prospective clients, the lawyer may comply with this requirement by filing 1 of the identical written communications and retaining for 3 years a single copy together with a list of the names and addresses of persons to whom the written communication was sent, retaining the same informaties. If the lawyer periodically sends the identical communication to additional-prospective clients, lists — of the additional names and addresses shall be filed-with the committee no — less-frequently-than monthly.
(C) Written communications mailed to prospective clients shall be sent only by regular U.S. mail, not by registered mail or other forms of restricted delivery.
(D) No reference shall be made in the communication to the communication’s having received any kind of approval from The Florida Bar.
(E) Every written communication shall be accompanied by a written statement of the lawyer’s or law firm’s qualifications conforming to the requirements of rule 4-7.3.
(F) If a contract for representation is mailed with the written communication, the top of each page of the contract shall be marked “SAMPLE” in red ink in a type size 1 size larger than the largest type used in the contract and the words “DO NOT SIGN” shall appear on the client signature line.
(G) The first sentence of any written communication concerning a specific matter shall be: “If you have already retained a lawyer for this matter, please disregard this letter.”
(H) Written communications shall be on letter-sized paper rather than legal-sized paper and shall not be made to resemble legal pleadings or other legal documents. This provision does not preclude the mailing of brochures and pamphlets.
(I) If a lawyer other than the lawyer whose name or signature appears on the communication will actually handle the case or matter, or if the case or matter will be referred to another lawyer or law firm, any written communication concerning a specific matter shall include a statement so advising the client.
(J) Any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall disclose how the lawyer obtained the information prompting the communication.
(K) A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client’s legal problem.
Comment
There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the person to the private importuning of a trained advocate, in a direct interpersonal encounter. A prospective client often feels overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest. Furthermore, the lawyer seeking the retainer is faced with a conflict stemming from the lawyer’s own interest, which may color the advice and representation offered the vulnerable prospect.
*944 The situation is therefore fraught with the possibility of undue influence, intimidation, and overreaching. This potential for abuse inherent in direct solicitation of prospective clients justifies the 30-day restriction, particularly since lawyer advertising permitted under rule 4-7.2 offers an alternative means of communicating necessary information to those who may be in need of legal services.
Advertising makes it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client to direct personal persuasion that may overwhelm the client’s judgment.
The use of general advertising to transmit information from lawyer to prospective client, rather than direct private contact, will help to assure that the information flows cleanly as well as freely. Advertising is out in public view, thus subject to scrutiny by those who know the lawyer. This informal review is itself likely to help guard against statements and claims that might constitute false or misleading communications in violation of rule 4-7.1. Direct private communications from a lawyer to a prospective client are not subject to such third-party scrutiny and consequently are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.
Direct written communications seeking employment by specific prospective clients generally present less potential for abuse or overreaching than in-person solicitation and are therefore not prohibited for most types of legal matters, but are subject to reasonable restrictions, as set forth in this rule, designed to minimize or preclude abuse and overreaching and to ensure lawyer accountability if such should occur. This rule allows targeted mail solicitation of potential plaintiffs or claimants in personal injury and wrongful death causes of action or other causes of action that relate to an accident, disaster, death, or injury, but only if mailed at least 30 days after the incident. This restriction is reasonably required by the sensitized state of the potential clients, who may be either injured or grieving over the loss of a family member, and the abuses that experience has shown exist in this type of solicitation.
Letters of solicitation and their envelopes should be clearly marked “advertisement.” This will avoid the recipient’s perceiving that there is a need to open the envelope because it is from a lawyer or law firm, only to find the recipient is being solicited for legal services. With the envelope and letter marked “advertisement,” the recipient can choose to read the solicitation, or not to read it, without fear of legal repercussions.
In addition, the lawyer or law firm should reveal the source of information used to determine that the recipient has a potential legal problem. Disclosure of the information source will help the recipient to understand the extent of knowledge the lawyer or law firm has regarding the recipient’s particular situation and will avoid misleading the recipient into believing that the lawyer has particularized knowledge about the recipient’s matter if the lawyer does not.
This rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for its members, insureds, beneficiaries, or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement that the lawyer or the lawyer’s law firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity that the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under rule 4-7.2.
*945 RULE 4-7.5 EVALUATION OF ADVERTISEMENTS
(a) Advisory Opinion. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication with these rules in advance of disseminating the advertisement or communication by submitting the material and fee specified in subdivision (d) to the standing committee on advertising at least 15 days prior to such dissemination. If the committee finds that the advertisement complies with these rules, the lawyer’s voluntary submission shall be deemed to satisfy the filing requirement set forth in subdivision (b) of this rule.
(b) Filing Copy of Advertisement. Subject to the exemptions stated in subdivision
(c)of this rule, any lawyer who advertises services through any public media or through written communication not involving solicitation as defined in rule 4-7.4 shall file a copy of each such advertisement with the standing committee on advertising for evaluation of compliance with these rules. The copy shall be filed either prior to or concurrently with the lawyer’s first dissemination of the advertisement or written communication and shall be accompanied by the information and fee specified in subdivision (d).
(c) Exemptions From Filing Requirement. The following are exempt from the filing requirements of subdivision (b) of this rule:
(1) Any advertisement in any of the public media, including the yellow pages of telephone directories, that contains no illustrations and no information other than that set forth in rule 4 — 7.2(n)(l)—(10). This exemption extends to television advertisements only if the visual display featured in such advertisements is limited to the words spoken by the announcer.
(2) A brief announcement in any of the public media that identifies a lawyer or law firm as a contributor to a specified charity or as a sponsor of a public service announcement or a specified charitable, community, or public interest program, activity, or event, provided that the announcement contains no information about the lawyer or law firm other than name, the city where the law offices are located, and the fact of the sponsorship or contribution. In determining whether an announcement is a public service announcement for purposes of this rule and rule 4r-7.2(n)(9), the following are criteria that may be considered:
(A) whether the content of the announcement appears to serve the particular interests of the lawyer or law firm as much as or more than the interests of the public;
(B) whether the announcement contains information concerning the lawyer’s or law firm’s area of practice, legal background, or experience;
(C) whether the announcement contains the address or telephone number of the lawyer or law firm;
(D) whether the announcement concerns a legal subject;
(E) whether the announcement contains legal advice; and
(F) whether the attorney paid to have the announcement published.
(3) A listing or entry in a law list.
(4) A newsletter mailed only to existing clients or other lawyers.
(5) Professional announcement cards stating new or changed associations, new offices, and similar changes relating to a lawyer or law firm, and that are mailed only to other lawyers, relatives, close personal friends, and existing clients.
(d)Contents of Filing. A filing with the committee as required by subdivision (b) or as permitted by subdivision (a) shall consist of:
(1) a copy of the advertisement or communication in the form or forms in which it is to be disseminated (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);
(2) a transcript, if the advertisement or communication is on videotape or audiotape;
(3) a statement listing all media in which the advertisement or communication will appear, the anticipated frequency of use of the advertisement or communication in each me *946 dium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
(4) a fee paid to The Florida Bar, in an amount to be set by the board of governors but not exceeding $50, payable to The Florida-Bar, to. This fee shall be used to offset the cost of evaluation and review of advertisements submitted under these rules and the cost of enforcing these rules.
(e) Evaluation of Advertisements. The committee shall evaluate all advertisements and written communications filed with it pursuant to this rule for compliance with the applicable rules set forth in this subchapter 4 — 7. The committee shall complete its evaluation within 15 days of receipt of a filing unless the committee determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the 15-day period, and so advises the lawyer within the 15-day period. In the latter event, the committee shall complete its review as promptly as the circumstances reasonably allow. If the committee does not send any communication to the lawyer within 15 days, the advertisement will be deemed approved.
(f) Substantiating Information. If requested to do so by the committee, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer’s advertisement or written communication.
(g) Notice of Noncompliance; Effect of Continued Use of Advertisement. When the committee determines that an advertisement or written communication is not in compliance with the applicable rules, the committee shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
(h) Committee Determination Not Binding; Evidence. A finding by the committee of either compliance or noncompliance shall not be binding in a grievance proceeding, but may be offered as evidence.
(i)Change of Circumstances; Refiling Requirement. If a change of circumstances occurring subsequent to the committee’s evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee along with an explanation of the change in circumstances and an additional fee set by the board of governors but not exceeding $50. Comment
This rule has a dual purpose: to enhance the court’s and the bar’s ability to monitor advertising practices for the protection of the public and to assist members of the bar to conform their advertisements to the requirements of these rules. This rule gives lawyers the option of submitting their advertisements to the committee for review prior to first use or submitting their advertisements at the time of first use. In either event, the committee will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The committee’s opinion will be advisory only, but may be considered as evidence of a good faith effort to comply with these rules. A lawyer who wishes to be able to rely on the committee’s opinion as demonstrating the lawyer’s good faith effort to comply with these rules has the responsibility of supplying the committee with all information material to a determination of whether an advertisement is false or misleading.
In The Florida Bar v. Doe, 634 So.2d 160 (Fla.1994), the court recognized the need for specific guidelines to aid lawyers and the bar in determining whether a particular announcement in the public media is a public service announcement as contemplated in this rule and rule 4-7.2(n). Subdivisions (c)(2)(A)-(F) of this rule respond to the court’s concern by setting forth criteria that, while not intended to be exclusive, provide the needed guidance. With the exception of subdivision (c)(2)(C), these criteria are based on factors considered by the court in Doe.
RULE 4-8.4 MISCONDUCT
A lawyer shall not:
*947 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;
(e) state or imply an ability to influence improperly a government agency or official;
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or
(g) fail to respond, in writing, to any inquiry by a disciplinary agency when such agency is conducting an investigation into the lawyer’s conduct*;
(h) willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation*; or
(i) engage in sexual conduct with a client that exploits the lawyer-client relationship.
Comment
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving “moral turpitude.” That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of rule 4-1.2(d) concerning a good faith challenge to the validity, scope, meaning, or application of the law apply to challenges of legal regulation of the practice of law.
Subdivision (d) of this rule proscribes conduct that is prejudicial to the administration of justice. Such proscription includes the prohibition against discriminatory conduct committed by a lawyer while performing duties in connection with the practice of law. The proscription extends to any characteristic or status that is not relevant to the proof of any legal or factual issue in dispute. Such conduct, when directed towards litigants, jurors, witnesses, court personnel, or other lawyers, whether based on race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, physical characteristic, or any other basis, subverts the administration of justice and undermines the public’s confidence in our system of justice, as well as notions of equality. This subdivision does not prohibit a lawyer from representing a client as may be permitted by applicable law, such as, by way of example, representing a client accused of committing discriminatory conduct.
Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer’s abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, or *948 agent and officer, director, or manager of a corporation or other organization.
A lawyer’s obligation to respond to an inquiry by a disciplinary agency is stated in subdivision (g) and rules 3-4.8 and 3-7.6(g)(2). While response is mandatory, the lawyer may deny the charges or assert any available privilege or immunity or interpose any disability that prevents disclosure of certain matter. A response containing a proper invocation thereof is sufficient under the Rules Regulating The Florida Bar. This obligation is necessary to ensure the proper and efficient operation of the disciplinary system.
Subdivision (h) of this rule was added to make consistent the treatment of attorneys who fail to pay child support with the treatment of other professionals who fail to pay child support, in accordance with the provisions of section 61.13015, Florida Statutes (1993). That section provides for the suspension or denial of a professional license due to delinquent child support payments after all other available remedies for the collection of child support have been exhausted. Likewise, subdivision (h) of this rule should not be used as the primary means for collecting child support, but should be used only after all other available remedies for the collection of child support have been exhausted. Before a grievance may be filed or a grievance procedure initiated under this subdivision, the court that entered the child support order must first make a finding of willful refusal to pay. The child support obligation at issue under this rule includes both domestic (Florida) and out-of-state (URESA) child support obligations, as well as arrearages.
Subdivision (i) proscribes exploitation of the chent and the lawyer-client relationship by means of commencement of sexual conduct. The lawyer-client relationship is grounded on mutual trust. A sexual relationship that exploits that trust compromises the lawyer-client relationship. A sexual relationship between a lawyer and a client that exists before commencement of the lawyer-client relationship does not violate this subdivision if the lawyer and client continue to engage in sexual conduct during the legal representation. For purposes of this subdivision, chent means an individual, not a corporate or other non-personal entity, and lawyer refers only to the lawyer(s) engaged in the legal representation and not other members of the law firm.
CHAPTER 5. RULES REGULATING TRUST ACCOUNTS
5-1. GENERALLY
RULE 5-1.1 TRUST ACCOUNTS
(a) Nature of Money or Property Entrusted to Attorney. Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney’s fees, and a refusal to account for and deliver over such property upon demand shall be deemed a conversion. This is not to preclude the retention of money or other property upon which the lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collection. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate, or fraudulent. In a controversy alleging a clearly excessive, extortionate, or fraudulent fee, announced willingness of an attorney to submit a dispute as to the amount of a fee to a competent tribunal for determination may be considered in any determination as to intent or in mitigation of discipline; provided, such willingness shall not preclude admission of any other relevant admissible evidence relating to such controversy, including evidence as to the withholding of funds or property of the chent, or to other injury to the chent occasioned by such controversy.
(b) Trust Accounts Required. Any bank or savings and loan association account maintained by a member of The Florida Bar to comply with rule 4-1.15, Rules of Professional Conduct, is and shall be clearly labeled and designated as a trust account. Any safe deposit box used in connection with the practice of law in Florida maintained by a member of The Florida Bar to comply with rule *949 4-1.15 shall be located in this state unless the client otherwise consents in writing. A member of The Florida Bar shall advise any institution in which such deposit box is located that it may include property of clients.
(c)Trust Accounts as Official Records. A member of The Florida Bar shall preserve or cause to be preserved the records of all bank and savings and loan association accounts or other records pertaining to the funds or property of a client or a third party maintained in compliance with rule 4-1.15 for a period of not less than 6 years subsequent to the final conclusion of the representation of a client relative to such funds or property. Such records shall include checkbooks, can-celled checks, check stubs, vouchers, ledgers and journals, closing statements, accountings or other statements of disbursements rendered to clients or third parties with regard to trust funds, or similar equivalent records clearly and expressly reflecting the date, amount, source, and reason for all receipts, withdrawals, deliveries, and disbursements of the funds or property of a client or third party. Such records shall be kept pursuant to these rules as a specific prerequisite to the right to receive, deliver, and disburse funds or property of a client or third party and to have a public aspect relating to the protection of clients and to fitness of a member of The Florida Bar to practice law. In any instance of an alleged violation by a member of The Florida Bar of this rule or of any of the Rules of Professional Conduct, such records insofar as they may relate in any way to the transaction, occurrence, or client in question shall be produced by the members of The Florida Bar for inspection, audit, and copying by a designated representative of The Florida Bar upon the direction of this court, a grievance committee, the board of governors if acting pursuant to rule 3-7.5(b), or a referee. Such records or copies thereof shall be admissible in evidence in any proceeding under this rule; provided notice of such intended use shall be given to any client involved, if practicable, unless such client is already aware of such intended use, and upon good cause shown by such client the admission of the same shall be under such conditions as shall be reasonably calculated thereafter to protect the confidences of such client in the event that the proceedings otherwise become public records. Permissible means of protection shall not prejudice the respondent and may include but are not limited to excision, in camera production, retention in sealed envelopes, or similar devices. Failure to maintain such records or to produce them upon such direction shall constitute ground for disciplinary action under this rule without regard to any other matter. The cost of any audit or investigation necessitated by such failure may be taxed against a respondent.
(d) Trust Accounting. Minimum trust accounting records shall be maintained and minimum trust accounting procedures must be followed by all attorneys practicing in Florida who receive or disburse trust money or property.
(e) Interest on Trust Accounts (IOTA) Program.
(1) Definitions. As used in rule 5-l.l(e), the term:
(A) “nominal or short term” describes funds of a client or third person that, pursuant to rule 5-l.l(e)(7), the lawyer has determined cannot practicably be placed at interest for the benefit of the client or third person;
(B) “Foundation” means The Florida Bar Foundation, Inc.;
(C) “IOTA account” means a trust account described in rule 5 — 1.1(e)(2).
(2) Required Participation. All nominal or short-term funds belonging to clients or third persons that are placed in trust with any member of The Florida Bar practicing from an office or other business location within the state of Florida shall be deposited into one or more interest-bearing trust accounts for the benefit of the Foundation, except as provided in rule 4 — 1.15 with respect to funds maintained other than in a bank account, or as provided in rule 5-1.2(a). Only trust funds that are nominal or short term shall be deposited into an IOTA account. The member shall certify annually, in writing, that the member is in compliance with, or is exempt from, the provisions of rule 5 — 1.1(d).
*950 (3) Eligible Financial Institutions. An IOTA account shall be established with any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws. The funds in each IOTA account shall be subject to withdrawal upon request and without delay.
(4) Interest Rates. The rate of interest on any IOTA account shall not be less than the rate paid by the financial institution to non-IOTA account depositors. Higher rates offered by the financial institution to customers whose deposits exceed certain time or quantity mínimums may be obtained by a lawyer or law firm for IOTA accounts on some or all of the deposited funds so long as there is no impairment of the right to immediately withdraw or transfer principal.
(5) Remittance Instructions. Lawyers or law firms shall direct the financial institution:
(A) to remit interest on the balance in the IOTA account, in accordance with the financial institution’s standard practice for non-IOTA account depositors, less reasonable service charges or fees, if any, in connection with the IOTA account, at least quarterly, to the Foundation;
(B) to transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyer’s or law firm’s IOTA trust account number as assigned by the financial institution, the rate of interest applied, the period for which the remittance is made, the total interest earned during the remittance period, the amount of any service charges or fees assessed during the remittance period, and the net amount of interest remitted for the period; and
(C) to transmit to the depositing lawyer or law firm, for each remittance, a report showing the amount paid to the Foundation, the rate of interest applied, and the period for which the report is made.
(6) Notice to Foundation. Lawyers or law firms shall advise the Foundation at Post Office Box 1553, Orlando, Florida 32802-9919, of the establishment of an IOTA account. Such notice shall include: the IOTA account number as assigned by the financial institution; the name of the lawyer or law firm on the IOTA account; the financial institution name; the financial institution address; and the name and Florida Bar attorney number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the state of Florida that has established an IOTA account.
(7) Determination of Nominal or Shorb-Term Funds. The lawyer shall exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term. In the exercise of this good faith judgment, the lawyer shall consider such factors as:
(A) the amount of a client’s or third person’s funds to be held by the lawyer or law firm;
(B) the period of time such funds are expected to be held;
(C) the likelihood of delay in the relevant transaction(s) or proceeding(s);
(D) the cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person; and
(E) minimum balance requirements and/or service charges or fees imposed by the financial institution.
The determination of whether a client’s or third person’s funds are nominal or short term shall rest in the sound judgment of the lawyer or law firm. No lawyer shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of such good faith judgment.
(8) Small IOTA Accounts. The Foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not *951 produced interest income net of reasonable financial institution service charges or fees.
(9) Confidentiality. The Foundation shall protect the confidentiality of information regarding a lawyer’s or law firm’s trust account obtained by virtue of rule 5-l.l(e).
(f) Unidentifiable Trust Fund Accumulations and Trust Funds Held for Missing Owners. When an attorney’s trust account contains an unidentifiable accumulation of trust funds or property, or trust funds or property held for missing owners, such funds or property shall be so designated. Diligent search and inquiry shall then be made by the attorney to determine the beneficial owner of any unidentifiable accumulation or the address of any missing owner. If the beneficial owner of an unidentified accumulation is determined, the funds shall be properly identified as the lawyer’s trust property. If a missing beneficial owner is located, the trust funds or property shall be paid over or delivered to the beneficial owner if the owner is then entitled to receive the same. Trust funds and property that remain unidentifiable and funds or property that are held for missing owners after being designated as such shall, after diligent search and inquiry fail to identify the beneficial owner or owner’s address, be disposed of as provided in chapter 717, Florida Statutes.
(g) Disbursement Against Uncollected Funds. A lawyer generally may not use, endanger, or encumber money held in trust for a client for purposes of carrying out the business of another client without the permission of the owner given after full disclosure of the circumstances. However, certain categories of trust account deposits are considered to carry a limited and acceptable risk of failure so that disbursements of trust account funds may be made in reliance on such deposits without disclosure to and permission of clients owning trust account funds subject to possibly being affected. Except for disbursements based upon any of the 6 categories of limited-risk uncollected deposits enumerated below, a lawyer may not disburse funds held for a client or on behalf of that client unless the funds held for that client are collected funds. For purposes of this provision, “collected funds” means funds deposited, finally settled, and credited to the lawyer’s trust account. Notwithstanding that a deposit made to the lawyer’s trust account has not been finally settled and credited to the account, the lawyer may disburse funds from the trust account in reliance on such deposit under any of the following circumstances:
(1) when the deposit is made by certified check or cashier’s check;
(2) when the deposit is made by a cheek or draft representing loan proceeds issued by a federally or state-chartered bank, savings bank, savings and loan association, credit union, or other duly licensed or chartered institutional lender;
(3) when the deposit is made by a bank check, official check, treasurer’s check, money order, or other such instrument issued by a bank, savings and loan association, or credit union within the state of Florida when the lawyer has reasonable and prudent grounds to believe the instrument will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time;
(4) when the deposit is made by a check drawn on the trust account of a lawyer licensed to practice in the state of Florida or on the escrow or trust account of a real estate broker licensed under chapter 475, Florida Statutes, when the lawyer has a reasonable and prudent belief that the deposit will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time;
(5) when the deposit is made by a check issued by the United States, the State of Florida, or any agency or political subdivision of the State of Florida;
(6) when the deposit is made by a cheek or draft issued by an insurance company, or title insurance company, or a licensed title insurance agency (not a title agency) authorized to do business in the state of Florida and the lawyer has a reasonable and prudent belief that the instrument will clear and constitute collected funds in the trust account within a reasonable period of time.
A lawyer’s disbursement of funds from a trust account in reliance on deposits that are *952 not yet collected funds in any circumstances other than those set forth above, when it results in funds of other clients being used, endangered, or encumbered without authorization, may be grounds for a finding of professional misconduct. In any event, such a disbursement is at the risk of the lawyer making the disbursement. If any of the deposits fail, the lawyer, upon obtaining knowledge of the failure, must immediately act to protect the property of the lawyer’s other clients. However, if the lawyer accepting any such check personally pays the amount of any failed deposit or secures or arranges payment from sources available to the lawyer other than trust account funds of other clients, the lawyer shall not be considered guilty of professional misconduct.
6-16. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED BUSINESS LITIGATION LAWYER
RULE 6-16.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate, identifying the lawyer as a “Board Certified Business Litigation Lawyer” The purpose of the standards is to identify those lawyers who practice in the area of business litigation and have the special knowledge, skills, and proficiency to be properly identified to the public as certified business litigation lawyers.
RULE 6-16.2 DEFINITIONS
(a)Business Litigation. “Business Litigation” is the practice of law dealing with the legal problems arising from commercial and business relationships including litigation of controversies arising from those relationships. In addition to actual pretrial and trial process, “business litigation law” includes evaluating, handling and resolving such controversies prior to the institution of suit, post-judgment proceedings, and the handling of such controversies before state courts, federal courts, administrative agencies, mediators, and arbitrators. By way of example, but not as a limitation, business litigation shall not include any area of practice dealing with personal injury, routine collection matters, marital and family law or workers’ compensation.
(b)Practice of Law. The “practice of law” for this area is defined as set out in rule 6-3.5(c)(l). The practice of law which otherwise satisfies these requirements but which is on a part-time basis will satisfy this requirement if the balance of the applicant’s activity is spent as a teacher of business litigation subjects in an accredited law school.
RULE 6-16.3 MINIMUM STANDARDS
(a) Minimum Period of Practice. The applicant must have at least 5 years of the actual practice of law of which at least 30 percent has been spent in active participation in business litigation law. At least 5 years of practice shall be immediately preceding application.
(b) Minimum Number of Matters. The applicant must have handled a minimum of 50 contested business litigation matters during the 5 years immediately preceding application. All such cases must have involved substantial legal or factual issues. In each of these 50 cases the applicant shall have been responsible for all or a majority of the presentation of evidence, argument to the tribunal, and representation of the client. At least 10 of the 50 cases must have been submitted to the trier of fact for resolution of 1 or more contested factual issues. The trier of fact shall include any federal or state court of general jurisdiction, an arbitration panel, administrative agency hearing, or bankruptcy court. At least 2 of the matters shall have been tried before a jury. On good cause shown, for satisfaction in whole or in part of the requirement of the 50 contested business litigation matters or the jury trial requirement, the business litigation certification committee may consider involvement in protracted adversary proceedings.
(c) Substantial Involvement. The applicant shall have substantial involvement in contested business litigation eases sufficient to demonstrate special competence as a business litigation lawyer. Substantial involvement includes active participation in client interviewing, counseling and investigating, preparation of pleadings, participation in discovery, taking of testimony, presentation of *953 evidence, negotiation of settlement, drafting and preparation of business litigation settlement agreements, and argument and trial of business law cases.
(d) Peer Review. The applicant shall select and submit names and addresses of 5 lawyers, not associates or partners, as references to attest to the applicant’s special competence and substantial involvement in business litigation law. Such lawyers themselves shall be substantially involved in business litigation law and shall be familiar with the applicant’s practice. No less than 1 shall be a judge or presiding officer of a court or other tribunal before whom the applicant has appeared as an advocate in a business litigation law matter in the 2 years immediately preceding the application. In addition, the business litigation certification committee may, at its option, send reference forms to other attorneys, judges, or officers and make such other investigation as necessary.
(e) Education. The applicant shall demonstrate completion of 50 hours of approved continuing legal education in business litigation law within the 5 years immediately preceding the date of application. Such education shall be approved by The Florida Bar and may include such activities as:
(1) teaching a course in business litigation law;
(2) completion of a course in business litigation law;
(3) participation as a panelist or speaker in a symposium or similar program in business litigation law;
(4) attendance at a lecture series or similar program concerning business litigation law, sponsored by a qualified educational institution or bar group;
(5) authorship of a book or article on business litigation law, published in a professional publication or journal; and
(6) such other educational activities as the business litigation certification committee shall approve.
(f) Examination. The applicant must pass an examination applied uniformly to all applicants to demonstrate sufficient knowledge, skills and proficiency in business litigation law to justify representation of special competence to the legal profession and to the public.
(g)Exemption. Notwithstanding any other provision hereof, any applicant who as of the effective date of these standards for certification as a business litigation lawyer; (i) is a member in good standing of The Florida Bar; (ii) holds a valid certificate issued by The Florida Bar certifying the applicant as a Board Certified Trial Lawyer; and, (iii) demonstrates substantial involvement in business litigation law in accordance with the minimum standards prescribed in subdivisions (a), (b) and (c) shall be exempt from the peer review, education and examination requirements set forth in subdivisions (d), (e) and (f). This exemption shall be applicable with respect to any applicant meeting the aforesaid requirements whose application is submitted within 2 years from the effective date of these standards. Certification under this exemption shall be effective for the duration of the remaining period of the applicant’s certification as a civil trial lawyer. For purposes of recertification as a business litigation lawyer, the period during which the applicant must have handled the minimum number of contested business litigation law matters and satisfied the education requirements pursuant to rule 6-16.4(c), shall be construed to be the period since certification or the last recertification of the applicant as a civil trial lawyer.
RULE 6-16.4 RECERTIFICATION
Recertification shall be pursuant to the following standards:
(a) Substantial Involvement. The applicant must show continuous and substantial involvement in the field of business litigation law through the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-16.3(c).
(b) Minimum Number of Matters. The applicant must have handled a minimum of 25 contested business litigation law matters since certification or the last recertification. All such cases must have involved substantial legal or factual issues. At least 3 of the 25 cases must have been submitted to the trier *954 of fact for resolution of 1 or more contested issues. The applicant must have been responsible for all or the majority of the presentation of the evidence, argument to tribunal, and representation of the client. On good cause shown, for satisfaction in part of the 25 contested business litigation law matters, the business litigation law certification committee may consider involvement in protracted litigation.
(c) Education. The applicant must have completed at least 50 hours of continuing legal education in the field of business litigation law since the filing of the last application for certification.
(d) Peer Review. The applicant must satisfy the reference requirements set forth in rule 6-16.3(d).
6-17. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED ADMIRALTY AND MARITIME LAWYER
RULE 6-17.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Admiralty and Maritime Lawyer.” The purpose of the standards is to identify those lawyers who practice admiralty and maritime law and who have demonstrated special knowledge, skills and proficiency to be properly identified to the public as certified admiralty and maritime lawyers.
RULE 6-17.2 DEFINITIONS
(a) Admiralty Law. “Admiralty and Maritime Law” is that distinct and separate practice of law dealing with the corpus of rules, concepts, and legal practices governing vessels, the shipping industry, the carrying of goods and passengers by water as well as related maritime concepts. Admiralty and maritime law includes the substantive law and procedural rules associated with the general maritime law of the United States, admiralty .jurisdiction and procedure, personal injury and wrongful death of seamen and passengers aboard vessels, compensation for injury and wrongful death of longshoremen and harbor workers, government regulation of marine safety and the maritime industry, carriage of goods, charter parties, salvage, general average, collision, marine insurance, maritime hens, limitation of liability, marine pollution and environmental law, maritime arbitration, recreational vessels, vessel finance and documentation, international aspects of maritime practice as well as other maritime topics which because of their special history, as well as for historical and practical reasons, have been recognized as distinctly different from our modern system of common law and have been traditionally grouped and practiced as “admiralty and maritime law.”
(b) Practice of Law. A minimum of 5 years in the practice of law on a full-time basis including substantial involvement in the practice of admiralty and maritime law as set forth in rule 6-17.3(b). The term “practice of law” as used in these standards shall be as defined in rule 6-3.5(c)(l). Practice of law that otherwise satisfies these requirements but that is on a part-time basis will satisfy the requirement if the balance of the applicant’s activity is spent as teacher or professor of admiralty law or related maritime subjects in an accredited law school.
RULE 6-17.3 MINIMUM STANDARDS
(a) Minimum Period of Practice. The applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for period of 5 years as of the date of application.
Notwithstanding the definition of “practice of law” in rule 6-3.5(c)(l), receipt of an LL.M degree in admiralty law, ocean law, maritime law or such other related fields approved by the board of legal specialization and education and admiralty law certification committee from an approved law school shall be deemed to constitute 1 year of the practice of law for purposes of the 5-year practice requirement but not the 5-year bar membership requirement.
(b) Substantial Involvement. The applicant must demonstrate substantial involve *955 ment in the practice of admiralty and maritime law during the 5 years immediately preceding the date of application, including devoting not less than 35 percent of such practice to admiralty and maritime law during each of the 3 years immediately preceding application. Except for the 3 years immediately preceding application, upon the applicant’s request and the recommendation of the admiralty and maritime law certification, the board of legal specialization and education may waive the requirement that the 5 years be “immediately preceding” the date of application if the board of legal specialization and education determines the waiver is warranted by special and compelling circumstances. Except for the 3 years immediately preceding application, receipt of an LL.M degree in admiralty law, ocean law, maritime law (or such other degree containing substantial admiralty and maritime law content as approved by the board of legal specialization and education) from an approved law school may substitute for 1 year of substantial involvement. An applicant must furnish information concerning the frequency of work and the nature of issues involved. For the purposes of this section, the “practice of law” shall be as defined in rule 6-3.5(c)(l) except that it shall also include time devoted to lecturing and/or authoring books or articles on admiralty and maritime law if the applicant was engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the admiralty law certification committee, but written or oral supplementation may be required.
(c)Peer Review. The applicant shall submit the names and address of 5 other attorneys who are familiar with the applicant’s practice, not including attorneys who currently practice in the applicant’s law firm, who can attest to the applicant’s special competence and substantial involvement in the field of admiralty and maritime law. The board of legal specialization and education and admiralty law certification committee may authorize references from persons other than attorneys and may also make such additional inquiries as they deem appropriate to complete peer review, as provided elsewhere in these rules.
(d) Education. During the 3-year period immediately preceding the date of the application, the applicant must demonstrate completion of the continuing legal education requirements in admiralty and maritime law as follows. The required number of hours shall be established by the board of legal specialization and education and shall in no event be less than 50 hours. Credit for attendance at continuing legal education seminars shall be given only for programs that are directly related to admiralty and maritime law. The education requirement may be satisfied by one or more of the following:
(1) attendance at continuing legal education seminars meeting the requirements set forth above;
(2) lecturing at, and/or serving on the steering committee of, such continuing legal education seminars;
(3) authoring books or articles published in professional periodicals or other professional publications;
(4) teaching courses in admiralty and maritime law and related subjects at an approved law school or other graduate level program presented by a recognized professional education association;
(5) such other methods as may be approved by the board of legal specialization and education and the admiralty certification committee.
The board of legal specialization and education and the admiralty law certification committee shall, by rule or regulation, establish standards applicable to this rule, including, but not limited to, the method of establishment of the number of hours allocable to any of the above-listed subdivisions. Such rules or regulations shall provide that hours shall be allocable to each separate but substantially different lecture, article, or other activity described in subdivisions (2), (3), and (4) above.
(e) Examination. The applicant must pass an examination, applied uniformly to all applicants, that will be practical and compre *956 hensive and designed to demonstrate special knowledge, skills, and proficiency in admiralty and maritime law topics including jurisdiction, procedure, personal injury and wrongful death, marine insurance and such other topics as may be selected by the admiralty certification committee. Such examination shall justify the representation of special competence in the field of admiralty law to the legal profession and the public.
RULE 6-17.4 RECERTIFICATION
Recertification shall be pursuant to the following standards:
(a) Substantial Involvement. A satisfactory showing, as determined by the board of legal specialization and education and the admiralty law certification committee, of continuous and substantial involvement in admiralty and maritime law throughout the period since the last date of certification. The demonstration of substantial involvement of at least 35 percent during each year of certification or prior recertification shall be made in accordance with the standards set forth in rule 6-17.3(b).
(b) Education. Completion of at least 75 hours of approved continuing legal education since the filing of the last application for certification. This requirement shall be satisfied by the applicant’s participation in approved continuing legal education pursuant to rule 6-17.3(d)(l) through (5).
(c) Peer Review. Submission of the names and addresses of 3 individuals who are active in admiralty and maritime law, including but not limited to lawyers and .judges who are familiar with the applicant’s practice, excluding persons who are currently employed in the applicant’s law firm, who can attest to the applicant’s special competence and substantial involvement in the field of admiralty and maritime law during the period since the last date of certification. The board of legal specialization and education or the admiralty law certification committee may solicit references from persons other than those whose names are submitted by the applicant and may also make additional inquiries as deemed appropriate.
(d)Examination. If, after reviewing the material submitted by an applicant for recer-tification and the peer review, the admiralty law certification committee determines the applicant may not meet the standards for admiralty law certification established under this chapter, the applicant may be required, as a condition of recertification, to pass the admiralty and maritime examination given to new applicants.
6-18. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED CITY, COUNTY AND LOCAL GOVERNMENT LAWYER
RULE 6-18.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as “Board Certified City, County and Local Government Lawyer.” The purpose of the standards is to identify those lawyers who practice city, county and local government law and have the special knowledge, skills, and proficiency to be properly identified to the public as certified city, county and local government lawyers.
RULE 6-18.2 DEFINITIONS
(a) City, County and Local Government Law. “City, County and Local Government Law” is the practice of law dealing with legal issues of county, municipal or other local governments, such as, but not limited to, special districts, agencies and authorities, including litigation in the federal and state courts and before administrative agencies; the preparation of laws, ordinances and regulations; and the preparation of legal instruments for or in behalf of city, county and local governments.
(b) Practice of Law. The “practice of law” for this area is defined as set out in rule 6-3.5(c)(l). Notwithstanding anything in the definition to the contrary, legal work done primarily for a purpose other than providing legal counsel or representation (including, but not limited to, work related to the administration of government or representing government as an elected official or as a state legislative lobbyist) shall not be treated as the practice of law.
*957 RULE 6-18.3 MINIMUM STANDARDS
(a) Minimum Period of Practice. The applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of 5 years as of the date of filing an application. The years of law practice need not be consecutive.
Notwithstanding the definition of “practice of law” in rule 6-3.5(c)(1), receipt of an LL.M, degree in urban affairs (or such other related fields approved by the board of legal specialization and education and the city, county and local government certification committee) from an approved law school shall be deemed to constitute 1 year of the practice of law for purpose of the 5-year practice requirement (but not the 5-year bar membership requirement) under this subsection. However, an applicant may not receive credit for more than 1 year of practice for any 12-month period under this subsection; accordingly, for example, an applicant who, while being engaged in the practice of law, receives an LL.M. degree by attending night classes, would not receive credit for the practice of law requirement by virtue of having received the LL.M. degree.
(b) Substantial Involvement. The applicant must demonstrate substantial involvement in the practice of Florida city, county and local government law during the 3 years immediately preceding the date of application. Upon an applicant’s request and the recommendation of the city, county and local government certification committee, the board of legal specialization and education may waive the requirement that the 3 years be “immediately preceding” the date of application if the board of legal specialization and education determines the waiver is warranted by special and compelling circumstances. Substantial involvement means the applicant has devoted 40 percent or more of the applicant’s practice to matters in which issues of Florida city, county and local government law are significant factors and in which the applicant had substantial and direct participation in those issues. An applicant must furnish information concerning the frequency of the applicant’s work and the nature of the issues involved. For the purpose of this subsection the “practice of law” shall be as defined in rule 6-3.5(c)(l), except that it shall also include time devoted to lecturing and/or authoring books or articles on city, county and local government law if the applicant was otherwise engaged in the practice of law during such period. Demonstration of compliance with this requirement shall be made initially through a form of questionnaire approved by the city, county and local government certification committee but written or oral supplementation may be required.
(c) Peer Review. The applicant shall submit the names and addresses of 5 other attorneys who are familiar with the applicant’s practice, not including attorneys who are currently employed by the same governmental entity as the applicant or who currently practice in the applicant’s law firm, who can attest to the applicant’s reputation for special competence and substantial involvement in the field of city, county and local government law. Such lawyers themselves shall be substantially involved in Florida city, county and local government law. The board of legal specialization and education and the city, county and local government certification committee may authorize references from persons other than attorneys and may also make such additional inquiries as they deem appropriate to complete peer review, as provided elsewhere in these rules.
(d) Education. The applicant must demonstrate that during the 3-year period immediately preceding the date of application, the applicant has met the continuing legal education requirements in Florida city, county and local government law as follows: the required number of hours shall be established by the board of legal specialization and education and shall in no event be less than 60 hours. Credit for attendance at continuing legal education seminars shall be given only for programs that are directly related to Florida city, county and local government law. The education requirement may be satisfied by 1 or more of the following:
*958 (1) attendance at continuing legal education seminars meeting the requirements set forth above;
(2) lecturing at, and/or serving on the steering committee of, such continuing legal education seminars;
(3) authoring articles or books published in professional periodicals or other professional publications;
(4) teaching courses in “city, county and local government law” at an approved law school or other graduate level program presented by a recognized professional education association;
(5) such other methods as may be approved by the board of legal specialization and education and the city, county and local government certification committee.
The board of legal specialization and education or the city, county and local government certification committee shall, by rule or regulation, establish standards applicable to this rule, including, but not limited to, the method of establishment of the number of hours allocable to any of the above listed paragraphs. Such rules or regulations shall provide that hours shall be allocable to each separate but substantially different lecture, article, or other activity described in subsections (2), (3), and (4) above.
(e) Examination. The applicant must pass a written examination, applied uniformly to all applicants, designed to demonstrate sufficient knowledge, skills, and proficiency in the field of Florida city, county and local government law to justify the representation of special competence to the legal profession and the public.
RULE 6-18.4 RECERTIFICATION
Recertification shall be pursuant to the following standards:
(a)Substantial Involvement. A satisfactory showing, as determined by the board of legal specialization and education and the city, county and local government certification committee, of continuous and substantial involvement in the field of Florida city, county and local government law throughout the period since the last date of certification. The demonstration of substantial involvement shall be made in accordance with the standards set forth in rule 6-18.3(b), except that the board of legal specialization and education and the city, county and local government certification committee may accept an affidavit from the applicant attesting to the applicant’s compliance with the substantial involvement requirement.
(b) Education. Completion of at least 60 hours of continuing legal education since the filing of the last application for certification (or recertification). The continuing legal education must logically be expected to enhance the proficiency of attorneys who are board certified city, county and local government lawyers. If the applicant has not attained 60 hours of continuing legal education, but has attained more than 30 hours during such period, successful passage of the written examination given by the board of legal specialization and education to new applicants shall satisfy the continuing legal education requirements.
(c) Peer Review. Completion of the reference requirements set forth in rule 6-18.3(c).
(d) Examination. If, after reviewing the material submitted by an applicant for recer-tification, the board of legal specialization and education and the city, county and local government certification committee determine that the applicant may not meet the standards in city, county and local government law established under this chapter, the board of legal specialization and education and the city, county and local government certification committee may require, as a condition of recertification, that the applicant pass the written examination given by the board of legal specialization and education to new applicants.
6-19. STANDARDS FOR CERTIFICATION OF A BOARD CERTIFIED AVIATION LAWYER
RULE 6-19.1 GENERALLY
A lawyer who is a member in good standing of The Florida Bar and who meets the standards prescribed below may be issued an appropriate certificate identifying the lawyer as a “Board Certified Aviation Lawyer.” *959 The purpose of the standards is to identify those lawyers who practice aviation law and have the special knowledge, skills, and proficiency to be properly identified to the public as certified aviation lawyers.
RULE 6-19.2 DEFINITIONS
(a) Aviation Law. “Aviation law” includes all facets of the law dealing with the ownership, operation, maintenance, and use of aircraft, airports and airspace. It also involves licensing and aeromedical issues encompassed by the Federal Aviation Act and the associated federal aviation regulations promulgated thereunder. It also encompasses the laws that have been developed to regulate the use of outer space.
(b) Practice of Law. The “practice of law” for this area is defined as set out in rule 6-3.5(c)(l).
6-19.3 AVIATION LAW MINIMUM STANDARDS
(a) Minimum Period of Practice. The applicant shall have been engaged in the practice of law in the United States, or engaged in the practice of United States law while in a foreign country, and shall have been a member in good standing of the bar of any state of the United States or the District of Columbia for a period of 5 years as of the date of filing an application. The years of law practice need not be consecutive.
(b) Substantial Involvement. The applicant must demonstrate substantial involvement sufficient to show special knowledge, skills, and proficiency in the practice of aviation law during the 3 years immediately preceding the date of application. Substantial involvement is defined as including devoting at least 30 percent of one’s practice to matters in which issues of aviation law are significant factors and in which the applicant had substantial and direct participation in those aviation issues. Upon the applicant’s request and the recommendation of the aviation law certification committee, the board of legal specialization and education may waive the requirement that the 3 years be “immediately preceding” the date of application if the board of legal specialization and education determines the waiver is warranted by special and compelling circumstances.
The applicant must furnish information concerning the frequency of the applicant’s work and the nature of the issues involved. For the purposes of this subdivision, the “practice of law” shall be as defined in rule 6-3.5(c)(l), except that it shall also include time devoted to lecturing and/or authoring books or articles on fields of aviation law if the applicant was engaged in the practice of law during such period.
Demonstration of compliance with this requirement shall be made initially in the form of a questionnaire approved by the aviation law certification committee, but written or oral supplementation may be required.
(c)Peer Review. The applicant shall submit the names and addresses of 5 other attorneys or judges who are familiar with the applicant’s practice, excluding attorneys who currently practice in the applicant’s law firm, who can attest to the applicant’s special competence and substantial involvement in the field of aviation law. The board of legal specialization and education and the aviation law certification committee may authorize references from persons other than attorneys in such cases as deemed appropriate. The board of legal specialization and education and the aviation law certification committee may also make such additional inquiries as deemed appropriate-
id) Education. The applicant must demonstrate that during the 3-year period immediately preceding the date of filing an application, the applicant has accumulated accredited continuing legal education in aviation law of not less than 60 hours. Credit for attendance at continuing legal education seminars shall be given only for programs that are directly related to aviation law. The education requirement may be satisfied by 1 or more of the following:
(1) attendance at continuing legal education seminars meeting the requirements set forth above;
(2) lecturing at and/or preparation of outline material of such continuing legal education seminars;
*960 (3) authoring articles or books published in professional periodicals or other professional publications;
(4) teaching course in “aviation law” at an approved law school or other graduate or undergraduate level program presented by a recognized professional education association;
(5) completing such home study programs as may be approved by the board of legal specialization and education or the aviation law certification committee, subject to the limitation that no more than 50 percent of the required number of hours of education may be satisfied through home study programs; or
(6) such other methods as may be approved by the aviation law certification committee.
The board of legal specialization and education or the aviation law certification committee shall, by rule or policy, establish standards applicable to this rule, including, but not limited to, the method of establishment of the number of hours allocable to any of the above-listed subdivisions. Such rules or policies shall provide that hours shall be alloca-ble to each separate but substantially different lecture, article, or other activity described in subdivisions (2), (3), and (4) above.
(e) Examination. The applicant must pass a written examination that is practical, objective, and designed to demonstrate special knowledge, skills, and proficiency in aviation law to justify the representation of special competence to the legal profession and the public.
RULE 6-19.4 RECERTIFICATION
Recertification shall be pursuant to the following standards:
(a)Substantial Involvement. The applicant must make a satisfactory showing, as determined by the board of legal specialization and education and the aviation law committee, of continuous and substantial involvement in aviation law throughout the period since the last date of certification. The demonstration of substantial involvement of at least 30 percent during each year after certification prior to recertification shall be made in accordance with the standards set forth in rule 6-19.3(b).
(b) Education. The applicant must show completion of at least 75 hours of accredited continuing legal education in aviation law since the filing of the last application for certification.
(c) Peer Review. The applicant shall submit the names and addresses of 5 attorneys or judges who are familiar with the applicant’s practice, excluding lawyers who currently practice in the applicant’s law firm, who can attest to the applicant’s special competence and substantial involvement in the field of aviation law. The board of legal specialization and education and the aviation law certification committee may also make such additional inquiries as deemed appropriate.
CHAPTER 9. GROUP AND PREPAID LEGAL SERVICES RULES
9-1. GENERALLY
RULE 9-1.1 AUTHORITY
Pursuant to the authority granted by bylaw 2-3.2(ed) the board of governors establishes the following rules.
10-2. DEFINITIONS
RULE 10-2.1 GENERALLY
Whenever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Unlicensed Practice of Law. The unlicensed practice of law shall mean the practice of law, as prohibited by statute, court rule, and case law of the State of Florida. For purposes of this chapter, it shall not constitute the unlicensed practice of law for nonlawyers to engage in limited oral communications to assist a person in the completion of a legal form approved by the Supreme Court of Florida. Oral communications by nonlawyers are restricted to those communications reasonably necessary to elicit factual information to complete the form and inform the person how to file the form.
The following language shall appear on any form completed pursuant to this rule and any individuals assisting in the completion of the *961 form shall provide their name, business name, address, and telephone number on the form:
This form was completed with the assistance of:
Name of Individual
Name of Business
Address
Telephone Number
Before a nonlawyer assists a person in the completion of a form in the manner set forth in this rule, the nonlawyer shall provide the person with a copy of a disclosure. A copy of the disclosure, signed by both the nonlawyer and the person, shall be given to the person to retain and the nonlawyer shall keep a copy in the person’s file. The disclosure does not act as or constitute a waiver, disclaimer, or limitation of liability. The disclosure shall contain the following provisions:
(Name) told me that he/she is not a lawyer and may not give legal advice or represent me in court.
(Name) told me that he/she may only help me fill out a form approved by the Supreme Court of Florida. (Name) may only help me by asking me questions to fill in the form. (Name) may also tell me how to file the form.
(Name) told me that he/she is not an attorney and cannot tell me what my rights or remedies are or how to testify in court.
_I can read English
__I cannot read English but this notice was read to me by (Name) in (Language).
(b) Nonlawyer or Nonattorney. For purposes of this chapter, a nonlawyer or nonattorney is an individual who is not a member of The Florida Bar. This includes, but is not limited to, attorneys admitted in other jurisdictions, law students, law graduates, applicants to The Florida Bar, disbarred attorneys, and suspended attorneys during the period of suspension.
(c) This Court or the Court. This court or the court shall mean the Supreme Court of Florida.
(d) Bar Counsel. Bar counsel is a member of The Florida Bar representing The Florida Bar in any proceeding under these rules. Any unlicensed practice of law staff counsel of The Florida Bar may serve as bar counsel or assistant bar counsel in a particular case.
(e) Respondent. A respondent is a non-lawyer who is accused of engaging in the unlicensed practice of law or whose conduct is under investigation.
(f) Referee. A referee is the judge or retired judge appointed to conduct proceedings as provided under these rules.
(g) Standing Committee. The standing committee is the committee constituted according to the directives contained in these rules.
(h) Circuit Committee. A circuit committee is a local unlicensed practice of law circuit committee.
(i) UPL Staff Counsel. UPL staff counsel is an employee of The Florida Bar employed to perform such duties, as may be assigned, under the direction of the executive director. When used in this rule, the term may include assistant UPL staff counsel.
(j) UPL. UPL is the unlicensed practice of law.
(k) The Board or Board of Governors. The board or board of governors is the board of governors of The Florida Bar.